1  **GODES & PREIS, LLP**
2  Joseph M. Preis (State Bar No. 212998)
    *jpreis@gaplegal.com*
3  Joshua R. Mino (State Bar No. 246760)
    *jmino@gaplegal.com*
4  Farouk G. Mansour (State Bar No. 311228)
    *fmansour@gaplegal.com*
5  300 Spectrum Center Drive, Suite 1420
6  Irvine, California 92618
7  Telephone: 949.468.0051
    Facsimile:  949.872.2281
8
9  Attorneys for Plaintiff/Cross-Defendant
    DOWNEY HYUNDAI, INC.
10

11              **UNITED STATES DISTRICT COURT**
12            **CENTRAL DISTRICT OF CALIFORNIA**
13

14  DOWNEY HYUNDAI, INC., a California    Case No.:  5:25-CV-00357-MRA-DTB
15  corporation,

16              Plaintiff,                **THIRD AMENDED**
                                          **COMPLAINT FOR:**
17
            vs.
18                                        **1)  AIDING AND ABETTING**
19  MUSTAFA AMIN, an individual, JUNAID   **BREACHES OF FIDUCIARY**
    AMIN, an individual; HARVEY M.        **DUTY FOR PERSONAL GAIN**
20  HARPER CO. d/b/a/ HARPER MOTORS,      **2)  CONVERSION**
    a California corporation; WILSON      **3)  RECEIVING STOLEN**
21  AUTOMOTIVE GROUP d/b/a/               **PROPERTY (PEN. CODE § 496)**
22  CLAREMONT TOYOTA, a California        **4)  CONSPIRACY TO VIOLATE**
    corporation; SMART MOTIVE INC., a     **THE RACKETEER**
23  California corporation; 4X4 MOTORS,   **INFLUENCED AND CORRUPT**
24  INC., a California corporation; OREMOR **ORGANIZATIONS ACT**
    AUTOMOTIVE GROUP, LLC d/b/a            **("RICO")**
25  BMW OF RIVERSIDE, a California        **5)  VIOLATION OF RICO**
26  limited liability company; BB AUTO LLC, **6) FRAUDULENT**
    a California limited liability company; CPN **CONCEALMENT**
27  KAR-DOGS AUTO EXCHANGE, LLC, a        **7) FRAUDULENT**
28  California limited liability company;  **MISREPRESENTATION**

---

**THIRD AMENDED COMPLAINT**

| | |
|---|---|
| 1 | WHOLESALE LUXURY AUTOS LLC, a | **8)  VIOLATION OF THE** |
| 2 | California limited liability company; | **UNFAIR COMPETITION LAW** |
|   | JACKSON MOTORS, INC. a California | **(BUS. & PROF. CODE, §§ 17200,** |
| 3 | Corporation, and DOES 1 through 10, | ***ET SEQ.*)** |
| 4 | inclusive, | |
| 5 | Defendants. | **[DEMAND FOR JURY TRIAL]** |
| 6 | MUSTAFA AMIN, an individual, | |
| 7 | Cross-Complainant, | |
| 8 | vs. | |
| 9 | DOWNEY HYUNDAI, INC., a California | |
| 10 | Corporation; RAJAN MALHOTRA, an Individual; and ROES 1 through 50, | |
| 11 | inclusive, | |
| 12 | Cross-Defendants. | |

**THIRD AMENDED COMPLAINT**

## NATURE OF ACTION

Plaintiff Downey Hyundai, Inc., ("Downey") is an automobile dealership that does business as Downey Hyundai, sells new and used automobiles and is a fixture in the Downey community. Downey employed Defendant Mustafa Amin ("Mustafa") as its Used Car Director, who was tasked with purchasing the majority of the used vehicles acquired by Downey for resale either through auction, private party transfers, or dealer-to-dealer sales. Purchasing used vehicles is one of the most important aspects of running an automobile dealership, because the ultimate profitability on the resale of any used vehicle is often determined by the dealership's amount paid for the vehicle.

During his employment with Downey, Mustafa and his co-conspirators, Defendants Junaid Amin, Harvey M. Harper Co. d/b/a/ Harper Motors ("Harper Motors"), Wilson Automotive Group d/b/a/ Claremont Toyota ("Claremont Toyota"), Smart Motive Inc. ("Smart Motive"), 4X4 Motors, Inc. ("4X4 Motors"), OREMOR Automotive Group, LLC d/b/a BMW of Riverside ("BMW Riverside"), BB Auto LLC ("BB Auto"), CPN Kar-Dogs Auto Exchange, LLC ("CPN"), Wholesale Luxury Autos LLC ("Wholesale Luxury"), and Jackson's Motors, Inc. ("Jackson's Motors") (collectively, the "Co-conspirator Defendants") (Mustafa and the Co-conspirator Defendants shall collectively be referred as "Defendants") conducted a fraudulent scheme to enrich themselves as well as their family members and associates by causing Downey to purchase used vehicles (many of which were defective and/or damaged) at "auction" but were in fact prearranged with inflated prices. Mustafa caused Downey to purchase at least 239 such used vehicles when it was customary for Downey to purchase ten or less used vehicles, rehabilitate them, and sell them before purchasing additional used vehicles. Mustafa's fraudulent scheme came to Downey's attention when its vehicle storage lot was full.

Mustafa employed a scheme whereby he would purchase used vehicles at auction through private dealer-to-dealer transactions, or what is known as "OVE"

**THIRD AMENDED COMPLAINT**

transactions at Manheim Auction.  However, before purchasing the subject vehicle, Mustafa would prearrange an inflated price for the vehicles with his Co-conspirator Defendants through their Used Car Sales Managers or other individuals who had the authority to sell the vehicles ("Used Car Sales Managers").  Many of the vehicles purchased were defective and/or damaged requiring significant rehabilitation costs. Additionally, Mustafa would purchase the vehicles at overinflated costs from the Co-conspirator Defendants and then return them through Manheim Auctions' buyback program, which Downey and JStar Automotive Group, Inc.[1] paid to participate in. Many times before the vehicles were even delivered to Downey and/or JStar the overinflated vehicles would be returned using this program. The Co-conspirator Defendants would get to keep the overinflated purchase price, and Manheim Auctions would then credit the difference between the overinflated purchase price and the actual vehicle value to Downey and JStar, which would in turn increased the costs to each of them to participate in the program. In fact, this scheme was used so often at JStar that Manheim Auctions canceled its ability to participate in the program.

Additionally, despite Downey not previously purchasing vehicles from the Co-conspirator Defendants, Mustafa would purchase these overinflated vehicles from this same group, over and over, demonstrating an association among Mustafa and each of the Co-conspirator Defendants. For example, during Mustafa Amin's short employment at Downey, he purchased the following number of vehicles through this scheme from each of the Co-conspirator Defendants as follows: Harper - seven vehicles,  Claremont Toyota - 19 vehicles, Smart Motive – 33 vehicles, 4X4 Motors, – five vehicles, BMW of Riverside  – 22 vehicles, BB Auto – 15 vehicles, CPN – three vehicles, Wholesale Luxury – one vehicle, and Jackson's Motors – 40 vehicles.

Additionally, when Mustafa quit working at Downey and began working at JStar, he began purchasing large numbers of vehicles from the same group. Similar to

---

[1] After Mustafa quit Downey, directly after when Downey began to question the purchases, he went to work at JStar Automotive Group, Inc. ("JStar") in Anaheim Hills, California.

**THIRD AMENDED COMPLAINT**

Downey, JStar's owner, Jared Merrell, testified, he also could not recall purchasing vehicles from the Co-conspirator Defendants, and certainly not in the volume, at the repeated over-inflated purchase prices, and in the short duration of time as Mustafa did. During Mustafa Amin's short employment at JStar, he purchased the following number of vehicles through this scheme from each of the Co-conspirator Defendants as follows: BB Auto – 28 vehicles, BMW of Riverside – one vehicle, Harper Motors – two vehicles, Claremont Toyota – six vehicle, Smart Motive – 25 vehicles, Wholesale Luxury Auto – nine vehicles, 4X4 Motors – one vehicle, and Jackson's Motors – six vehicles.

Mustafa was running a similar scheme through Norwalk Auto Auction, Dealer Ready, Inc. and Majorleague Automotive Remarketing Services ("Majorleague") whereby he would work in concert with his Co-conspirator Defendants to inflate the purchase price of the used vehicles he caused Downey to purchase. Additionally, based upon information and belief, "Brad" who was a General Manager at Norwalk was involved in this scheme, where he would stall paperwork, delay delivery of vehicles and concealed the true nature of these transactions, including the conditions of the vehicles. In fact, on at least one occasion, Brad was seen at Downey exchanging money with Mustafa.

Downey, and JStar in turn, simply saw that the used vehicles purchased by Mustafa were purchased at auction or through other apparently legitimate means. However, by purchasing used vehicles "OVE" through private dealer-to-dealer transactions at Manheim Auction, Norwalk Auto Auction, Dealer Ready, Inc., and Majorleague, Mustafa was able to prearrange with the Co-conspirator Defendants' Used Car Sales Managers an inflated price for the vehicle to be purchased by Downey and JStar and conceal these facts.  Mustafa has many contacts in the used vehicle dealership industry, and several of his family members operate used automobile dealerships, including his father, Junaid Amin, owner of 4X4 Motors, Inc., who Mustafa purchased vehicles from and who aided in the perpetration of the fraud.  After

**THIRD AMENDED COMPLAINT**

purchasing these used vehicles for Downey and JStar at prearranged and inflated prices, Mustafa would receive kickbacks or other consideration from his family members or associates who benefited from Downey paying inflated prices for their used vehicles.

In fact, it was recently discovered that multiple overtures were made to Clint Taylor (who previously worked at Downey during the relevant time period as Downey's Used Car Manager) to recruit him to participate in this scheme. He recalls two to three separate individuals on multiple occasions approaching him to participate during the time that Mustafa was employed at Downey. Mustafa introduced Mr. Taylor to his associates who in turn promised to provide Mr. Taylor with kickbacks or other consideration if he purchased vehicles from them. Mr. Taylor refused these advances. When Mustafa and these associates realized Mr. Taylor would not participate in the scheme to purchase vehicles at overinflated prices, they stopped soliciting his participation. Mr. Taylor believes, based upon these conversations and interactions, that Mustafa and his associates were all working in concert together.

Attached hereto as **Attachment 1** is an excel workbook showing the 239 used vehicles Mustafa caused Downey to purchase, and which identifies those that were purchased from the Co-conspirator Defendants. The alleged scheme was perpetrated whereby Mustafa Amin would contact the Used Car Sales Manager at each of the Co-conspirator Defendants on or near the date of each noted purchase dates of the vehicles to come to terms on the amounts for each vehicle purchased at "auction" and the kickback and/or or other consideration from Mustafa Amin's family members or associates who benefited from Downey paying inflated prices for their used vehicles. As Mr. Merrell testified he discovered that the cars were routinely overinflated by between $3,000 and $5,000 per vehicle.

These deals were reached using their personal cell phones in order to conceal these communications from Downey and JStar. For example, at Claremont Toyota, Mustafa Amin would contact the Used Car Sales Manager by the name of "Rigo" to

**THIRD AMENDED COMPLAINT**

coordinate the OVE transaction and work out the kickbacks each would receive. At 4X4 Motors each would contact his father Junaid Amin, at BB Auto he would contact Bulent Bayram and/or "Bao", at CPN he would contact Charles Nettles, at Wholesale Luxury he would contact Qudus Abdul. At Smart Motive he would coordinate the scheme with Sajaid Umer Batliwal ("Sajaid").  Jackson's Motors, Inc. he would contact Farhang Rousta.  Mustafa Amin would similarly reach out to his contacts who were the Used Car Sales Managers at Harper Motors, and BMW of Riverside (named "CW"), to coordinate the pre-arranged sale and price and incentives that each would receive and did so at or near the time of each transaction listed is **Attachment 1**. Based upon information and belief and the testimony from Mr. Merrell at JStar, these same individuals were contacted to coordinate the scheme while Mustafa worked at JStar.

Mustafa Amin would use the OVE process on each of these transactions in order to make the sales appear legitimate. However, the fact that each of the transactions were OVE rather than standard auctions and the same group of Co-conspirator Defendants sold large number of vehicles to both Downey and JStar, establishes the coordination among the Co-conspirator Defendants. Alternatively, there would be multiple enterprises A sampling of these transaction at Downey for each Co-conspirator Defendant is reflected in **Attachment 1 through 10.** These attachments provide the date of the sale, the specific vehicle involved, who sold the vehicles in questions, the purchase price, and which auction company was involved.

This was not the only time that Mustafa Amin and his father Junaid Amin perpetrated this scheme as it was discovered that Defendants ran the same schemes at JStar. (*See*, *JSTAR Automotive Group, Inc. v. BB Auto, LLC, et al* (2024) Case No. 30-2024-01420741-CU-BT-WJC filed in the Superior Court of California for the County of Orange (the "JSTAR Matter"). Prior to filing the lawsuit, JStar began to investigate Mustafa's illicit conduct by compiling a list of all the transactions and purchase prices.  Attached as **Attachment 11**, is a list of the vehicles that Mustafa

**THIRD AMENDED COMPLAINT**

purchased on behalf of JStar, which identifies the specific vehicle involved, who sold the vehicles in questions, the purchase price, and which auction company was involved. Originally, Mr. Merrell believed that the cars were purchased at live auctions. However, during his investigation, he reviewed the slips, called the auction companies, and determined that they were not purchased at live auctions rather through OVE sales.

In December 2022, Mr. Merrell along with JStar's counsel met with Mustafa in a conference room to confront him with the investigation findings that he had "discovered that [Mustafa] was colluding with a bunch of other dealers and -- and having me overpay for vehicles." In response, as Mr. Merrell testified, Mustafa denied it at first but then "he finally admitted it…[j]ust kept apologizing and saying he was sorry…he seemed upset what he did to me. Wanted to try to make things right." After that meeting, Mustafa created a document without being asked where he agreed to "help get rid of cars purchased from Smart Motive…Jacksons Motors, Claremont Toyota…and will help either make up the loss with wholesale profit or pay the loss." This document was presented by Mustafa to Mr. Merrell, who identified a list of dealerships he would help recover from, thereby admitting their involvement, without Mr. Merrell asking for this information. This Agreement is attached as **Attachment 12**. After having two full-time employees rehabilitate and resell all 239 vehicles that Mustafa caused Downey to purchase through his fraudulent scheme (which took over six months to complete), Downey was damaged in an amount to be proven at trial, but not less than $2,000,000.00. Mr. Merrell estimates that his damages totaled up to $1,500,000 (exclusive of the approximately 20 cars that Smart Motive bought back for approximately $900,000.)

## <u>JURISDICTION</u>

1.      This Court has original, federal-question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.  In particular, the RICO claim arises under 18 U.S.C. § 1962.

**THIRD AMENDED COMPLAINT**

2.     This Court has supplemental jurisdiction over Downey's remaining claims pursuant to 28 U.S.C. § 1367 because the Court has original, federal-question jurisdiction over Downey's RICO claim, and the remaining claims are so related that they form part of the same case or controversy under Article III of the United States Constitution.

3.     This Court has personal jurisdiction over Defendants because this action arises out of and is related to Defendants' purposeful contacts with the State of California.

## PARTIES AND STANDING

4.     Downey is a corporation incorporated under the laws of the state of California, and its principal place of business is in Downey, California.

5.     Downey is informed and believes, and on that basis alleges, that Mustafa Amin is a resident of Corona, California, and a citizen of California.  At all times mentioned herein, Mustafa Amin was Downey's Used Car Director and perpetrated the fraudulent scheme in Downey, California.

6.     Downey is informed and believes, and on that basis alleges, that Junaid Amin is a resident of Corona, California, and a citizen of California.  Junaid Amin is Mustafa Amin's father and owner of 4X4 Motors, Inc.

7.     Downey is informed and believes, and on that basis alleges, that Defendant Harvey M. Harper Co. d/b/a/ Harper Motors is a California corporation operating as a car dealership, and that its principal place of business is located in Eureka, California.

8.     Downey is informed and believes, and on that basis alleges, that Defendant Wilson Automotive Group d/b/a/ Claremont Toyota is a California corporation doing business as a car dealership, and that its principal place of business is located in Claremont, California.

9.     Downey is informed and believes, and on that basis alleges, that Defendant Smart Motive Inc., is a California corporation, and that its principal place

**THIRD AMENDED COMPLAINT**

of business is located in Jurupa Valley, California.

10.    Downey is informed and believes, and on that basis alleges, that Defendant 4X4 Motors, Inc. is a California corporation, and that its principal place of business is located in Corona, California.

11.    Downey is informed and believes, and on that basis alleges, that Defendant OREMOR Automotive Group, LLC d/b/a BMW of Riverside is a California limited liability company, and that its lone member is OREMOR Management & Investment Company, which is a California Corporation with its principal place of business located in Ontario, California.

12.    Downey is informed and believes, and on that basis alleges, that Defendant BB Auto LLC is a California limited liability company, and that its lone member is Bulent Bayram whose address is 28024 Palos Verdes Dr. East, Ranchos Palos Verdes, CA 90275.

13.    Downey is informed and believes, and on that basis alleges, that Defendant CPN Kar-Dogs Auto Exchange, LLC is a California limited liability company, and that its lone member is Charles Nettles whose address is 500 East E Street #209, Ontario, CA 91764.

14.    Downey is informed and believes, and on that basis alleges, that Defendant Wholesale Luxury Autos LLC is a California limited liability company, and that its lone member is Qudus Abdul whose address is 17 Ima Loa Ct., Newport Beach, CA 92663.

15.    Downey is informed and believes, and on that basis alleges, that Defendant, Jackson Motors, Inc. is a California corporation, and that its principal place of business is located in Bellflower, California.

16.    The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants herein designated by the fictitious names Does 1 through 10, inclusive, are unknown to Downey, who therefore sues said defendants by such fictitious names.  Downey will amend this pleading accordingly when the true names

**THIRD AMENDED COMPLAINT**

1  and capacities of such fictitiously named defendants have been ascertained.  Downey

2  is informed and believes, and based thereon alleges, that each of the fictitiously named

3  defendants is in some manner responsible for the acts, omissions, and occurrences,

4  and actually and proximately caused and contributed to the various injuries and

5  damages alleged herein.

6      17.    Downey is informed and believes, and on that basis alleges, that at all

7  times herein mentioned, each of the defendants, including Does 1 through 10, was the

8  alter ego, agent, servant, accomplice, and/or employee of each other, acting within the

9  course and scope of said relationships, and whose acts or omissions alleged herein

10  were authorized, adopted, approved and/or ratified by each other.

11              **VENUE AND FORUM**

12      18.    Venue and forum are proper in the Central District of California pursuant

13  to Title 28, United States Code section 1391(b)(2), because a substantial part of the

14  events or omissions giving rise to the claim occurred in this district.

15          **FACTS COMMON TO ALL CAUSES OF ACTION**

16      19.    Mustafa gained Downey's confidence by presenting himself as a rising

17  star in the automobile dealership industry and touting his experience and his family's

18  history in the same.  Mustafa also invited Downey's owners to Junaid Amin's home

19  for dinner to gain their trust.

20      20.    After gaining Downey's confidence, Mustafa was hired as the Used Car

21  Director and began purchasing used vehicles for Downey.  In only a few months' time,

22  Mustafa engaged in serial collusion with Co-conspirator Defendants to purchase

23  hundreds of slow-moving vehicles, faulty vehicles, and other unsuitable vehicles in

24  fraudulent auctions with Co-conspirator Defendants, all at inflated prices, in order for

25  Defendants to each profit from the illicit transactions.  In essence, Mustafa and Co-

26  conspirator Defendants each shared in the ill-gotten profits from purchasing the

27  vehicles from each co-Defendant at above-market rates, constituting a series of illicit

28  acts of collusion in the form of a proverbial "wheel of fraud," where Mustafa formed

**THIRD AMENDED COMPLAINT**

the "hub" of an enterprise in which the co-Defendants were the "spokes." To disguise the transactions, the vehicles were purchases at elevated, fake "auction" rates, with insufficient paperwork, and then hid in storage lots to delay discovery of Defendants' illicit enterprises, undertaken at Downey's (and JStar's) expense. Moreover, Mustafa concealed from Downey the volume of (hundreds of) vehicles he purchased on its behalf, the prearranged inflated prices of the used vehicles with the Used Car Sales Managers of the Co-conspirator Defendants, which were concealed from Downey by prearranging the direct purchases through car auctions (but where no auctions took place), the fact that he was purchasing these used vehicles from his family and associates, and the fact that he was receiving incentives and kickbacks for purchasing these used vehicles (as evidenced by the solicitation of Mr. Taylor). In other instances, Mustafa would use the Manheim Auction buyback program to enrich his Co-conspirator Defendants at the expense of Downey and JStar. Additionally, the fact that all purchases made among Defendants were processed through OVE through the auction companies rather than being purchased at auction further establishes that the Used Car Sales Managers from each of the Co-conspirator Defendants and Mustafa Amin knowingly and intuitionally engaged in the series of schemes, as they would repeatedly use the same process. The Used Car Sales Managers would benefit as they would be able to obtain credit or other incentives from the Co-conspirator Defendants for getting troubled vehicles off their lots (at inflated values) to the detriment of Downey (and JStar).

21.    Upon learning of its vehicle storage lot unexpectedly being full of used vehicles, Downey investigated, and Mustafa stated that all 239 vehicles belonged to his family and that they would pay rent to use Downey's storage lot. Downey declined and instructed Mustafa to remove his family's vehicles from its storage lot, only to learn thereafter that Mustafa actually purchased all 239 vehicles on Downey's behalf through property auctions. After Mustafa was confronted with this information, he abruptly quit his employment with Downey and started working at JStar, where, as

**THIRD AMENDED COMPLAINT**

1    Mr. Merrell testified, Mustafa later admitted in a meeting with Mr. Merrell and JStar's
2    counsel to perpetuating the scheme.  (*See also*, JSTAR Matter).
3        22.    Downey's employees and agents even witnessed agents of Co-
4    conspirator Defendants coming to Downey's facility to arrange for transfer of the
5    illicit profits between Mustafa and the "spokes" of the enterprises, the other co-
6    Defendants.  On those occasions, Mustafa would simply say that the parties on scene
7    at Downey "owed [Mustafa] money" or that Mustafa "owed them money."  In this
8    way, each Co-conspirator Defendant and Mustafa engaged in a series of parallel, illicit
9    enterprises to defraud Downey - each enterprise being designed, through collusion and
10   fraud, to unload on Downey unsuitable vehicles, at inflated prices, through fraudulent
11   "auctions."  As Mr. Merrell testified, Mustafa admitted to running this scheme at JStar,
12   apologized profusely, and even identified some of his co-conspirators in his scheme
13   that he would work to recover the losses from (*see*, **Attachment 12**). In each case, the
14   "hub" (Mustafa) and the "spokes" (Co-conspirator Defendants) each then colluded,
15   between "spoke" and "hub," to conceal the true nature of the transactions and delay
16   discovery, all in furtherance of their pattern of specific, intentional, schemes against
17   Downey and subsequently JStar, amounting in each case to at least, several, if not
18   more, fraudulent vehicle transactions for each co-Defendant, as detailed herein.
19   Brazenly, the co-Defendants then even sent agents to Downey to meet with Mustafa
20   to surreptitiously handle dispersal of profits under the guise of some, innocent,
21   supposedly-unrelated, "private" transfer of money.  Mustafa's office on Downey's
22   premises was used in this way to meet with agents such as Sajaid (from Smart Motive)
23   and "Brad" (a General Manager from Norwalk Auto Auctions) to transfer the ill-
24   gotten funds; when Downey asked about these persons and what they were doing on
25   Downey's premises, Mustafa vaguely claimed that they were part of his "network"
26   and were dropping off "money owed to [Mustafa]."  Indeed, while working for
27   Downey, Mustafa used to carry a book around in the workplace that he claimed
28   tracked all of the people in his "network" that "owed him money" on "deals," acting

**THIRD AMENDED COMPLAINT**

as if these were private matters unrelated to Downey. Throughout Mustafa's short tenure at Downey he identified each of the named Co-Conspirator Defendants as those in his "network" and/or those that owed him money. Little did Downey know at the time that these "deals" were not Mustafa's private matters at all, but instead they were the corrupt enterprises of the "hub and spoke" scam that forms the core of this lawsuit and which Mustafa admitted to participating in when confronted at JStar. As later discovered, and as reflected in Exhibits 1 through 10, it is the same Co-Conspirator Defendants (along with the same auction companies) that Mustafa bragged were in his "network" and/or those that owed him money on "deals" that Downey ended up purchasing large volumes of vehicles from at inflated costs from through Mustafa. Even more brazenly, Mustafa even introduced some of his "associates" to other individuals at Downey, including but not limited to Clint Taylor, in an attempt to induce him to participate in the enterprise's scheme.

23. Through a comprehensive analysis of each of Downey's used vehicle purchases, it discovered that none of the vehicles were purchased at auction as portrayed, but were prearranged direct sales ran through Manheim, Norwalk, Dealer Ready, Inc., and Majorleague through OVE transactions. Similarly, Mustafa purchased a large volume of vehicles from the same Co-conspirator Defendants when he went to work at JStar using the same concealment tactics. Downey has suffered losses to be proven at trial, but not less than $2,000,000.00 based on Mustafa causing Downey to overpay for the 239 used vehicles.

## FIRST CAUSE OF ACTION

## AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY FOR PERSONAL GAIN

### (Against All Defendants)

24. Downey incorporates, restates, and re-alleges the allegations contained in the Nature of Action section and paragraphs 1 through 23, inclusive, as though fully set forth herein.

**THIRD AMENDED COMPLAINT**

25.    As its Used Car Director, Mustafa owed Downey fiduciary duties, of which Downey is informed and believes Defendants were aware.

26.    Downey is informed and believes, and on that basis avers, that Defendants knew that Mustafa owed Downy fiduciary duties because of Mustafa's position at Downey.

27.    Notwithstanding their actual knowledge that Mustafa owed fiduciary duties to Downey, Defendants personally conspired with and aided and abetted Mustafa in breaching those duties to Downey by aiding Mustafa in purchasing used vehicles for Downey at prearranged and inflated prices in exchange for kickbacks other incentives.

28.    Defendants provided substantial assistance to Mustafa in breaching his fiduciary duties to Downey by providing the used vehicles that Mustafa arranged for Downey to purchase at prearranged and inflated prices, and by prearranging inflated prices with Mustafa.

29.    Defendants engaged in this scheme for their own personal gain in that they were able to receive inflated prices for the used vehicles they sold to Downey.

30.    As a proximate cause of the Defendants aiding and abetting Mustafa's breach of fiduciary duty to Downey, Downey suffered losses to be proven at trial, but not less than $2,000,000.00.

31.    Defendants engaged in the foregoing scheme intentionally, oppressively, and maliciously, and Downey is entitled to punitive and exemplary damages.

## SECOND CAUSE OF ACTION

## CONVERSION

### (Against All Defendants)

32.    Downey incorporates, restates, and re-alleges the allegations contained in the Nature of Action section and paragraphs 1 through 23, inclusive, as though fully set forth herein.

///

**THIRD AMENDED COMPLAINT**

33. Downey had a right to ownership and possession of the monies it paid for the used vehicles Mustafa caused it to purchase, which totals $1,079,159.62.

34. Defendants have substantially interfered with Downey's property by causing Downey to overpay for used vehicles through the scheme described above.

35. Downey at no point consented to Defendants' actions, which were a substantial factor in causing Downey harm.

36. As a proximate cause of Defendants' conversion of Downey's property, Downey suffered losses to be proven at trial, but not less than $2,000,000.00.

37. Defendants engaged in the foregoing scheme intentionally, oppressively, and maliciously, and Downey is entitled to punitive and exemplary damages.

## <u>THIRD CAUSE OF ACTION</u>

### <u>RECEIVING STOLEN PROPERTY (PEN. CODE, § 496)</u>

**(Against All Defendants)**

38. Downey incorporates, restates, and re-alleges the allegations contained in the Nature of Action section and paragraphs 1 through 23, inclusive, as though fully set forth herein.

39. In perpetrating the fraudulent scheme described above, Defendants intended to and have deprived Downey of its property.

40. Defendants have therefore committed theft, as defined by Penal Code section 484.

41. As such, Defendants have violated Penal Code section 496, subdivision (a), by receiving and withholding Downey's stolen property, which they knew to be stolen.

42. Pursuant to Penal Code section 496, subdivision (c), Downey is entitled to recover from Defendants three times its actual damages in addition to Downey's actual damages, along with its costs of suit and reasonable attorney's fees.

///

///

**THIRD AMENDED COMPLAINT**

## FOURTH CLAIM FOR RELIEF

## CONSPIRACY TO VIOLATE RICO

## (28 U.S.C. § 1962(d))

### (Against All Defendants)

43.    Downey incorporates, restates, and re-alleges the allegations contained in the Nature of Action section and paragraphs 1 through 23, above, as if set forth in full herein.

44.    18 U.S.C. § 1962(d) states that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

45.    Defendants all conspired to violate 18 U.S.C. § 1962(c) by agreeing to commit mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. 1961(1)) against Downey through the fraudulent scheme averred above.  This scheme was formed in a "hub and spoke" pattern, wherein Mustafa was the "hub" and central organizer, while he engaged in a series of fraudulent "auctions" and illicit collusion between himself and each co-Defendant (the "spokes"), respectively.  Each "spoke" of this network constituted a distinct conspiracy that intentionally engaged in at least several instances of wire and mail fraud, as averred above.

46.    As a result, each of the Defendants are liable for the acts of co-conspirators.

47.    Under the provisions of 18 U.S.C. §1964(c), Defendants are liable to Plaintiffs for three times the damages suffered, plus costs of bringing the suit, and reasonable attorney's fees in connection herewith.

48.    Downey suffered losses to be proven at trial, but not less than $2,000,000.00.

## FIFTH CAUSE OF ACTION

## VIOLATION OF RICO

### (Against All Defendants)

49.    Downey incorporates, restates, and re-alleges the allegations contained

**THIRD AMENDED COMPLAINT**

in the Nature of Action section and paragraphs 1 through 23, and 43 through 48, inclusive, as though fully set forth herein.

50.    Mustafa and the other Defendants formed an association in fact enterprise, in the form of a "hub and spoke" series of associations, with each spoke being formed for the common purpose of perpetuating the series of fraudulent schemes averred above.

51.    As Downey's Used Car Director, Mustafa had a duty to disclose his relationships with the other Co-conspirator Defendants (familial or otherwise), the methods by which he was purchasing used vehicles on Downey's behalf (auction, dealer-to-dealer, or otherwise), the volume of used vehicles he was purchased on Downey's behalf (i.e., 239 vehicles rather than the standard 10 or less), and the prearranged, inflated prices of all 239 used vehicles he purchased on Downey's behalf listed in **Attachment 1**.

52.    Downey was not aware of Mustafa's relationships with the other Co-conspirator Defendants (familial or otherwise), the methods by which he was purchasing used vehicles on Downey's behalf (auction, dealer-to-dealer, or otherwise), the volume of used vehicles he purchased on Downey's behalf (i.e., 239 vehicles rather than the standard 10 or less), and the prearranged, inflated prices of all 239 used vehicles he purchased on Downey's behalf listed in **Attachment 1.**

53.    Mustafa intended to deceive Downey by refusing to disclose his relationships with the other Defendants (familial or otherwise), the methods by which he was purchasing used vehicles on Downey's behalf (auction, dealer-to-dealer, or otherwise), the volume of used vehicles he purchased on Downey's behalf (i.e., 239 vehicles rather than the standard 10 or less), and the prearranged, inflated prices of all 239 used vehicles he purchased on Downey's behalf listed in **Attachment 1.**

54.    Had Mustafa disclosed his relationships with the other Defendants (familial or otherwise), the methods by which he was purchasing used vehicles on Downey's behalf (auction, dealer-to-dealer, or otherwise), the volume of used vehicles

**THIRD AMENDED COMPLAINT**

he purchased on Downey's behalf (i.e., 239 vehicles rather than the standard 10 or less), and the prearranged, inflated prices of all 239 used vehicles he purchased on Downey's behalf listed in **Attachment 1**, Downey would never have employed him or allowed him to purchase any vehicles on its behalf.

55.    For all 239 vehicles Downey purchased pursuant to Mustafa and the other Co-conspirator Defendants' fraudulent scheme, Downey reasonably relied on the invoices provided to it either electronically or through the mail in remitting payment for the overpriced vehicles at issue listed in **Attachment 1**.

56.    As a result of Mustafa's omitted information, which was a substantial factor in causing Downey's harm, Downey suffered losses to be proven at trial, but not less than $2,000,000.00.

57.    Downey is informed and believes that Defendants committed similar fraudulent omissions against JStar Automotive Group, Incorporated, based on a complaint filed in the Superior Court of California for the County of Orange, Case No. 30-2024-01420741-CU-BT-WJC, thereby establishing a pattern of racketeering activity.

58.    Under the provisions of 18 U.S.C. §1964(c), Defendants are liable to Plaintiffs for three times the damages suffered, plus costs of bringing the suit, and reasonable attorney's fees in connection herewith.

59.    Downey suffered losses to be proven at trial, but not less than $2,000,000.00.

## SIXTH CAUSE OF ACTION

## FRAUDULENT CONCEALMENT

### (Against all Defendants)

60.    Downey incorporates, restates, and re-alleges the allegations contained in the Nature of Action section and paragraphs 1 through 23, inclusive, as though fully set forth herein.

61.    Downey and Mustafa were in an employer-employee relationship when

**THIRD AMENDED COMPLAINT**

Mustafa was Downey's Used Car Director, thereby giving rise to Mustafa's duty to disclose his relationships to the Co-conspirator Defendants.

62.    Mustafa intentionally failed to disclose his series of "hub and spoke" illicit enterprise relationships to the Co-conspirator Defendants in order to gain Downey's trust and to perpetuate his fraudulent scheme to use his position as Downey's Used Car Director to purchase at least 239 used vehicles at inflated prices to the benefit of the Defendants and to the detriment of Downey.  Neither did any Defendant disclose the false "auctions" that they participated in, as part of the schemes outlined herein, the kickbacks that were being paid, or their ongoing relationships with Mustafa.

63.    Downey did not know of Mustafa's relationships with the Co-conspirator Defendants when it hired him as its Used Car Director and authorized him to purchase used vehicles on its behalf.  Likewise, Downey did not know of the false auctions conducted by the Defendants until it was far too late to prevent any of these transactions.

64.    Mustafa intended to, and indeed did, deceive Downey by intentionally failing to disclose his relationships with the Co-conspirator Defendants.  Mustafa and co-Defendants, and each of them, participated in fraudulent, false "auctions," each concealed from Downey intentionally, that purported to be open, fair, and above-board auctions, but, in reality, concluded with pre-arranged, inflated prices – to be paid by Downey, with Mustafa and the various co-Defendants illicitly sharing the ill-gotten profits therefrom.  Defendants further conspired to conceal the details of the fraudulent transactions from Downey through misleading and incomplete paperwork from the auction companies and by physically concealing the vehicles in storage lots once purchased by Downey, or by purchasing at inflated values and them immediately returning the vehicles through the Manheim buyback program, before the vehicles were even delivered to Downey, to conceal the transactions and benefits bestowed upon the Co-conspirator Defendants to the detriment of Downey.

**THIRD AMENDED COMPLAINT**

65.    Had Mustafa disclosed to Downey his relationships with the Co-conspirator Defendants, Downey would not have hired him as its Used Car Director and certainly would not have authorized him to purchase used vehicles on its behalf. Had all Defendants, or any of them, disclosed the fraudulent and false nature of the "auctions," then Downey would never have completed the respective transactions and would never have been saddled with unsuitable vehicles that it overpaid for, all to Defendants knowing, ill-gotten profit.

66.    As a result of Mustafa intentionally failing to disclose his relationships to the Co-conspirator Defendants and vice versa, and as a result of the undisclosed, false, auctions that Defendants undertook intentionally to defraud Downey, Defendants were able to perpetuate the fraudulent scheme, which harmed Downey in an amount to be proven at trial, but an amount greater than $2,000,000.

67.    Downey is informed and believes, and on that basis avers, that the aforementioned acts of Defendants were willful, wanton, and malicious, and Downey is therefore entitled to punitive and exemplary damages from them.

### SEVENTH CAUSE OF ACTION

### FRAUDULENT MISREPRESENTATION

#### (Against All Defendants)

68.    Downey incorporates, restates, and re-alleges the allegations contained in the Nature of Action section and paragraphs 1 through 23, inclusive, as though fully set forth herein.

69.    Through their fraudulent scheme and fraudulent invoices, Defendants misrepresented to Downey the purchase prices of at least the 239 used vehicles Mustafa purchased on behalf of Downey identified in **Attachment 1** were conducted a live auctions.

70.    The Defendants would convey the inflated purchase prices to the auction companies, who in turn would write up vague, incomplete and misleading invoices that would be sent to Downey for payment. However each of the Defendants knew

**THIRD AMENDED COMPLAINT**

that the purchase price they conveyed was overinflated and did not represent the true value of each vehicle sold, as identified in **Attachment 1**.

a.  A sample of Defendant Harper Motors' fraudulent invoices through MajorLeague, wherein its General Sales Manager Anthony McPherson and/or other unspecified representatives misrepresented the purchase prices of used vehicles to Downey, are attached hereto as **Attachment 2**.

b.  A sample of Defendant Claremont Toyota's fraudulent invoices through Norwalk Auto Auction including from "Brad" (the General Manager from Norwalk Auto Auctions) and Manheim California, wherein "Rigo" and/or other unspecified representatives misrepresented the purchase prices of used vehicles to Downey, are attached hereto as **Attachment 3**.

c.  A sample of Defendant Smart Motive Inc.'s fraudulent invoices through Norwalk Auto Auction including from "Brad" (the General Manager from Norwalk Auto Auctions) and Manheim California, wherein Sajaid and other unspecified representative misrepresented the purchase prices of used vehicles to Downey, are attached hereto as **Attachment 4**.

d.  A sample of Defendant 4X4 Motors Inc.'s fraudulent invoices through Manheim California, wherein Defendant Junaid Amin (its owner and Mustafa's father) misrepresented the purchase prices of used vehicles to Downey, are attached hereto as **Attachment 5**.

e.  A sample of Defendant BMW of Riverside's fraudulent invoices through Norwalk Auto Auction including from "Brad" (the General Manager from Norwalk Auto Auctions), wherein an unspecified representative from BMW of Riverside misrepresented the purchase prices of used vehicles to Downey, are attached hereto as **Attachment 6**.

f.  A sample of Defendant BB Auto LLC's fraudulent invoices through Norwalk Auto Auction including from "Brad" (the General Manager from Norwalk Auto Auctions) and Manheim California, wherein Bulent

**THIRD AMENDED COMPLAINT**

Bayram and/or other unspecified representative misrepresented the purchase prices of used vehicles to Downey, are attached hereto as **Attachment 7**.

g. A sample of Defendant CPN Kar-Dog Auto Exchange LLC's fraudulent invoices on its own behalf and through Dealer Ready, Inc., wherein its Owner/Manager Charles P. Nettles misrepresented the purchase prices of used vehicles to Downey, are attached hereto as **Attachment 8**.

h. A sample of Defendant Wholesale Luxury Autos LLC's fraudulent invoices through Manheim California, wherein an unspecified representative misrepresented the purchase prices of used vehicles to Downey, are attached hereto as **Attachment 9**.

i. A sample of Defendant Jackson Motors, Inc.'s fraudulent invoices through Norwalk Auto Auction including from "Brad" (the General Manager from Norwalk Auto Auctions) and Manheim California, wherein Farhang Roustaan and/or other unspecified representative misrepresented the purchase prices of used vehicles to Downey, are attached hereto as **Attachment 10**.

71. The purchase prices of at least the 239 vehicles Mustafa purchased on behalf of Downey identified in **Attachment 1** were false, Downey is informed and believes, and on that basis avers that, Defendants knew they were false and intended for Downey to rely on these misrepresentations.

72. Additionally, each of the Co-conspirator Defendants were responsible for providing accurate information about the vehicles condition to the auction companies before each sale.

73. Co-conspirator Defendants failed to provide accurate information about the vehicles including known damage, mechanical issues, and other matters which should have been disclosed but was not, thereby misrepresenting the true condition of the vehicles being sold.

**THIRD AMENDED COMPLAINT**

74.    Downey reasonably relied on Defendants' misrepresentations to their benefit and to Downey's detriment, and Defendants' misrepresentations were a substantial factor in causing Downey's harm, which harmed Downey in an amount to be proven at trial, but an amount greater than $2,000,000.

75.    Downey is informed and believes, and on that basis avers, that the aforementioned acts of Defendants were willful, wanton, and malicious, and Downey is therefore entitled to punitive and exemplary damages from Defendants.

## **EIGHTH CAUSE OF ACTION**

## **VIOLATION OF THE UNFAIR COMPETITION LAW**

## **(BUS. & PROF. CODE, § 17200, *et seq*)**

### **(Against All Defendants)**

76.    Downey incorporates, restates, and re-alleges the allegations contained in the Nature of Action section and paragraphs 1 through 23, inclusive, as though fully set forth herein.

77.    Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unlawful," "unfair," or "fraudulent" business practice.

78.    California Business and Professions Code section 17204 allows a person injured by unfair business acts or practices to prosecute a civil action for violation of the UCL.

79.    Downey is informed and believes that Defendants acted unlawfully, unfairly, and fraudulently by perpetuating the fraudulent scheme on Downey described above and as a result Downey has lost money.

80.    As a result of Defendants' conduct, Downey has been harmed as averred above, and Downey is entitled to disgorge Defendants as well as restitution for money received from their ill-gotten gains.

81.    Defendants must also be enjoined from engaging in similar unlawful, unfair, and fraudulent business practices.

**THIRD AMENDED COMPLAINT**

82.    Downey is also entitled to attorneys' fees pursuant to California Code of Civil Procedure, section 1021.5.

## **PRAYER**

Downey prays for judgment against Defendants, and each of them, and, to the extent provided by law, relief as follows:

**As to Downey's First, Second, Third, Fourth, and Fifth Claims:**

1.    For compensatory damages, in an amount to be proven at trial;

2.    For special and consequential damages according to proof at trial;

3.    For incidental damages according to proof at trial;

4.    For prejudgment interest on all sums awarded to Downey;

5.    For attorneys' fees and costs as authorized by contract or statue; and

6.    For punitive damages under California Civil Code section 3294, in an amount to be determined at trial;

7.    For treble damages Penal Code section 496, subdivision (c), and 18 U.S.C. §1964(c);

**As to Downey's Seventh Claim:**

8.    For public injunctive relief enjoining Defendants from further perpetuating their fraudulent scheme of artificially inflating the prices of used car sales;

9.    For restitution, in an amount to be proven at trial;

10.    For disgorgement of profits, in an amount to be proven at trial;

11.    For attorney's fees;

12.    For cost of suit; and

**As to All Causes of Action:**

13.    For such other and further relief as the Court deems just and proper.

///

///

///

**THIRD AMENDED COMPLAINT**

1
## JURY DEMAND

2
Downey herein demands a trial by jury of all issues in this action.

3

4
Date: August 29, 2025                    **GODES & PREIS, LLP**

5

6
                                 By:  *s/ Joshua R. Mino*

7
                                     Joseph M. Preis
                                     Joshua R. Mino

8
                                     Farouk G. Mansour
                                     Attorneys for Plaintiff/Cross-

9
                                     Defendant

10
                                     DOWNEY HYUNDAI, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THIRD AMENDED COMPLAINT**